With respect to the first eight special pleas, the court agree in opinion that they are insufficient and fail *Page 249 
upon the demurrers; a majority of the court found their opinion upon the recital in these several pleas of the writ or process in the original suit, by which it appears to have issued against Jehu Clark and Thomas Clark, trading under the firm of Jehu Thomas Clark: and being recited as having issued in the suit in which the said supposed judgment in said declaration mentioned was rendered, thereby ascertains and presents the matter of estoppel, which otherwise the plaintiff would have had to set forth in his replication; and hence as the ninth and subsequent special pleas omit the recital of the writ, therefore, upon those which negative the service of process or notice, without any reference to the matter of estoppel, a majority of the court consider the same not demurrable, and that the plaintiff should not have demurred to the same, as by so doing, he admits the truth of the plea, when by a replication he ought to have set forth and relied on the matter of estoppel.
As I do not concur in the opinion delivered by a majority of the court, I shall proceed as briefly as is consistent with a clear expression of the particular rules of pleading, to state the view I have taken of this case. The decision made upon the first eight special pleas, establishes the legal effect of the matter recited, as conclusive, upon the principle that the same thereby appearing, operates an estoppel. Before proceeding further it is necessary to show that such is the effect of allowing the demurrers to the first eight special pleas. Upon recurring to the pleas which recite the issuing of the writ, it will appear that they do not recite any return or service of the same, or any part of the record showing the same, or the appearance of the parties in the original suit; they ascertain and identify the judgment as being against the defendants, but still leave out all reference to the service of process, or the record evidence of any appearance, which are the facts expressly denied, and on which alone issues are tendered by the several pleas respectively. If, therefore, the defend-dant has a right to contradict the fact of service, or to deny that he appeared to or in the original suit, notwithstanding process and judgment rendered, then it must follow that there is nothing recited in either of the first eight special pleas, by which that right is concluded. The allowance of the demurrers as to the first eight pleas can, therefore, only be sustained upon the ground that the judgment concludes by precluding the defendant from tendering an issue, either upon the fact of service of mesne process or appearance. This I consider invariably the effect of the judgment when declared upon as the foundation *Page 250 
or cause of action, and not as the inducement. Examples of the latter exist in actions for an escape and on recognizances of bail: when the right of action accruing by reason of matter subsequent to the judgment, if the existence thereof be denied by the plea, the plaintiff cannot demur, but must by replication specially set it forth. But when the right and remedy are both perfected and established, by the judgment, the declaration thereupon setting forth the judgment, with the prout patet recordum, without reciting the entire record of the original suit, does, by making the matter of estoppel appear on the face of the narr., conclude the parties. If this be not the established rule of pleading, then the modern practice is founded in error, for it dispenses with the recital of the entire record of the original suit and only requires, as has been done in the present case, that the judgment should be set forth. If the defendant can plead matter anterior to the judgment, because it has not been set forth, as the non-service of process or non-appearance; or if the estoppel only operates when the particular fact embraced in the record of the original suit is either stated in the narr. or plea, then in all cases in which the narr. omits to recite the whole record, the defendant would have a right to avail himself of the plea of the fact omitted, which would again render it necessary to revive the obsolete practice of spreading out in the narr. the entire record of the original suit. But I cannot discover any good reason for departing from the modern practice, the utility of which experience has fully established. It is not the issuing or service of process nor the appearance,, that constitutes the matter of estoppel; it is the judgment of the court which concludes the parties. Hence that being set forth, does on the face of the narr., show the matter of estoppel. This doctrine of estoppel by record is founded upon the maxim "interest republican at sit finis litium;" therefore, when a court of record, having jurisdiction renders final judgment, it concludes all parties and privies; the record is conclusive evidence of the judicial act, but the estoppel is the judgment; the preliminary stages of the suit anterior to the judgment are as matters of evidence conclusively proved by the record, but if they stop short of obtaining the judgment of the court, no right litigated is concluded, nothing but that ultimately and conclusively determines the suit as res judicata, and estops them from ever controverting the same matters within the same jurisdiction. Hence the reason why the modern practice dispenses with the recital of the entire record, and only requires the judgment to be *Page 251 
set forth, because it necessarily imports the existence of all anterior matters essential to sustain it. Hence in like manner in declaring upon an indenture, if the narr. states the lease to be by indenture, and the defendant pleads "nil habuit in tenementis," the plaintiff need not reply the estoppel, but may demur, because the estoppel appears on the record; otherwise, if the declaration be "quod cum. dimississet," without saying it was by indenture. (1 Salk. 277; 2 LordRaymond 1154, 1551; 1 Sound. PL 326, n.) The reason upon which the rule is founded applies equally to judgments as indentures, they are both inter partes. But it may be remarked additionally with respect to a judgment, that being a record oyer cannot be demanded. (1 East 148, Chit. Plead. 415.) And that if the judgment referred to by the prout patet per recordum, which is set forth in the narr., be of the same court, the plaintiff may at once pray that the court will inspect the record, without giving the defendant an opportunity to rejoin by traversing the record and making a perfect issue between the parties. (Jackson vs. Wickes, 7 Taunt. 30, and the authorities there cited.) In no case, whether it be in the narr., plea or replication, does the party relying upon the record incorporate the same by recital at length in either; the judgment, if the suit or defence depends thereon is set forth, and the same averred to be by record, the existence or non-existence of which can alone be determined by the court on inspection. When the judgment relied on is of a different court, within the same jurisdiction, the reference thereto by the words prout patet per recordum under the plea of nul tiel record and issue thereon entitles the party to have a day given to bring in the record, not that the same may he spread out at large, and made a part of the record in the suit pending; but that it may he inspected by the court, in rendering judgment upon the issue already made. The rule of pleading applicable to records, excluding oyer and dispensing with profert, is founded upon their character as being public, inter partes, and sufficiently apparent under the prout; but very different is the foundation on which rests the reason of the rule in cases where oyer is demand-able and profert necessary; such as bonds, deeds and other similar instruments, which are in the custody and possession of the party claiming or relying upon them; and therefore the party to be affected by them is entitled to oyer before taking defence, and profert is necessary to be made. The difference between the production of a record, or the authenticated copy thereof, and profert, it is necessary to attend to in this case. The former presents to the eye of the *Page 252 
court for inspection the record, as conclusive evidence, and the party controverting its existence cannot avail himself of any issue thereon, as matter of fact to be tried by a jury, as he may do with respect to matter of which profert is required. The latter is designed to exhibit the entire ground of the plaintiff's claim or right; which, if the defendant demand over, must be granted for his information, before pleading, and for the express purpose of enabling him to understand andcon-sider the same, before taking his defence. The purpose for which profert is made, and oyer demanded and granted, shows clearly and unequivocally the substantial distinction existing between such proceeding and that in which the party in his declaration states "prout patet per recordum, a copy whereof duly authenticated the plaintiff here in court produceth." The one is evidently for the party, the other for the court; upon the former issue may be taken, to be tried by a jury; to the latter it cannot be so taken, as to withdraw the determination thereof from the court, upon inspection. Hence I conclude, it inevitably follows, that the only plea that could be taken to that part of the declaration which "sets forth the judgment and al-ledges the existence of the record, in the words following, "as by the record and proceedings thereof remaining in the said District Court more fully appears, a copy whereof, duly authenticated, the plaintiff here in court produceth," was theplea of nul tiel record; unless the defendant, admitting the existence thereof, intended to impeach the legal effect by matter in avoidance. Pleas of this kind do not contradict either the existence of the record or the authenticated copy produced, nor tender any issue thereupon, but relying upon matter of avoidance, concede the existence of that which, but for the special cause assigned, would have its legal operation and effect. Therefore, although it be not allowed by plea to contradict a record, yet it is competent to impeach the same, under the plea per fraudem. In like manner, an estoppel by deed or indenture may be avoided by a similar plea, when otherwise it would not be competent for a party thereto to contradict any fact established by the instrument itself. From what has been stated, it appears to me that in all cases in which the plaintiff declares in debt upon the record of a judgment of the same court, if the narr. set forth the judgment, the matter of estoppel thereby appears on the face of the declaration, and therefore any plea contradicting the same by denying the service of process, the appearance of the party, or any fact concluded by the judgment, would be ill on demurrer. The defendant tendering such a *Page 253 
plea would be estopped by the matter apparent in the narr.; a demurrer to such a plea would not admit the fact to be true, for it only admits the truth of facts well pleaded. Hence to such a plea it would be irregular to reply, stating that process did issue, or that the party did appear; such a replication would not bring out the matter of estoppel, which is the judgment, but would only introduce into the pleadings a question of fact, involving the regularity of the original judgment, which can only be reversed by writ of error. But such a replication would further be improper, because it would take issue upon the fact tendered by the plea, when the determination thereof would only ascertain a fact, which being established would not per se, necessarily prove the existence of the judgment, inasmuch as the process may have issued and the party may have appeared, and yet no judgment have been rendered. The cause of action is the judgment, and on that alone the narr. founds the right of recovery; its existence or non-existence as set forth in the declaration, is the matter in issue, the evidanee relied on is the copy of the record, duly authenticated; or if in the same court it would be the court's own record. In such a case, if the defendant be allowed to plead that no process was served, or that he did not appear to the suit, it is obvious it would be in effect tendering an issue upon the plaintiff's evidence, and no defence against the. matter averred and relied on in the narr., as the cause of action. Hence it would be irregular for the plaintiff, by his replication, to join in or take issue upon the facts thus negatived by the plea, for it would necessarily lead to the inquiry, not by the court, but by the jury, whether they were true or false, and impose the onus probandi on the party replying. It is true the record evidence would be proof, but not as under the plea of nul tiel record, by inspection of the court, for in determining this issue, it would not be the simple legal question whether such a record exists or not, but the fact controverted would be, whether the party was served with process or appeared in the suit or not. The replication to such a plea would abandon the issue tendered by the narr., as to the existence or non-existence of the judgment, and would be sanctioning such a plea as sufficient, contrary to the legal maxim, that there can be no averment in pleading against the validity of a record, though there may be against its operation; therefore, no matter of defence can be pleaded which existed anterior to the recovery of the judgment. (1 Chit.Plead. 480.) I make these remarks in reference, as I have already stated, to the rule of pleading when *Page 254 
the record is the foundation of the action, and not merely inducement. In the former. I consider the narr. disclosing the matter of estoppel, not by reciting the whole record, but by setting forth the judgment, precludes the defendant from pleading the non-service of process, non-appearance, or any other matter of defence which existed anterior to the recovery of the judgment, and that such pleas would be ill on demurrer.
This rule of pleading allowing the demurrer when the matter of estoppel appears on the face of the narr., I consider too long settled and sanctioned by the authority of decided cases, to be now either questioned or controverted. It would be superfluous to reply specially in the replication the matter of estoppel, when it is disclosed in the declaration. The only inquiry then in the present case, as it appears to me, after allowing the demurrer to the pleas reciting the writ, would be, whether the narr. has set forth the judgment on. which the suit is founded;, in such a manner as to disclose the matter of estoppel, and thereby render all the pleas ill on demurrer. I have already remarked, that in this case the only matter of estoppel, so far as the pleadings are concerned, is the judgment. It has been supposed that the plaintiff in his declaration has omitted to set it forth, so as to make it appear to be a judgment recovered against Jehu and Thomas Clark, trading under the firm of Jehu Thomas Clark, inasmuch as he has only said, "by the consideration and judgment of the said court, reovered against the said Jehu and Thomas Clark, the defendants, the sum of $285 45, above demanded." It is supposed the omission of the words "trading under the firm of Jehu ThomasClark," renders it uncertain whether the judgment declared on was recovered against the defendants, trading under the firm of Jehu Thomas Clark.
In considering this branch of the case, it may be proper first to determine how the narr. should describe the original judgment. The rule of pleading requires that it should be set forth; by this I do not understand that it is to be literally recited, for the expression is used frequently to distinguish between setting forth the substance of an instrument and the recital of the same. Hence, I infer, that it is not requisite for the narr. to contain the original judgment in the precise language or words in which it was rendered by the court; it is sufficient if the declaration substantially sets it forth, with a prout patet per recordum. Formerly, in an action upon a judgment it was usual to recite in the declaration, the whole of the proceedings in the former suit, but this *Page 255 
is no longer the practice, (Murray vs. Wilson, 1Wils. 318:) and it is sufficient to state shortly, "that heretofore, to wit. in such a term in such a court, then holden at Westminster, c., the plaintiff, by the consideration and judgment of that court, recovered against the defendant, the sum of $ which was adjudged by the said court to the plaintiff for his damages which he had sustained, as well by reason of the non-performance by the said defendant of certain promises and undertakings, made by him to the plaintiff, as for his costs and charges by him about his suit in that behalf expended;" or if the judgment were in debt, the form varies accordingly. (1 Chit. Plead. 354-5.) It is, however, necessary in debt upon a judgment in the courts of Westminster, to show with certainty the term and parties, and the sum recovered. (1 Chit.Plead. 355.) We will now proceed to inquire whether the declaration has set forth the judgment, so as to show with certainty, the term and parties and sum recovered. From the summons issued and returned the meaning and application of the word defendants appears; for the command to the sheriff was to summon Jehu Clark and Thomas Clark, late trading under the name and firm of Jehu Thomas Clark, that they be and appear, c., to answer James C. Pritchett, surviving partner of William Pritchett, deceased, late trading under the name and firm of William James C. Pritchett, c. This summons being returned by the sheriff, summoned Jehu Clark and Thomas Clark. Judgment was taken against Thomas Clark by default; Jehu Clark appeared to the summons separately and not jointly, by M. W. Bates, his attorney. This appearance constituted him legally, or according to the description in the summons, a defendant; for the appearance although for himself separately is, notwithstanding, in reference to himself, an appearance to the summons in the suit as fully as if it had been against him alone, as a member of the firm; for he has not by any plea denied the existence of the firm, or that he was a member of it. Having thus submitted to answer according to the summons, the declaration referring to him as one of the defendants by the name of the said Jehu Clark, can be understood in no other character than as described in the summons, the same Jehu Clark who with Thomas Clark, the other defendant, was summoned by the names and description of Jehu and Thomas Clark, late trading under the name and firm of Jehu Thomas Clark. The defendant by his appearance in this suit, without objecting to or denying his liability as a member of the firm summoned, has thereby admitted his being *Page 256 
a member of the firm, and by pleading to the narr. the matter of defence relied on has, in the character of defendant, according to the summons, undertaken to defend by plea the plaintiffs demand against the firm. As defendant therefore, in this action, he must be considered as the same Jehu Clark, according to the description in the summons, precisely as when a writ issues against executors or administrators, the word defendant or defendants would in the narr. be understood as applied to the parties, in their respective and not their individual character; and a judgment set forth as recovered against the defendants, would be considered and held to be a judgment against the defendants, as executors or administrators in their representative character and none other. The writ formerly was recited in the caption of the narr., the modern practice omits the recital for brevity, but a blank being left, it has been usual to consider it the same as inserted for all the purposes of pleading. That I am correct in reference to the legal import and meaning of the word defendant, will appear by adverting to two cases in which the question was raised, and after argument finally determined, establishing the word as sufficiently certain and descriptive of the proper party. In 6 Taunton 121,Davidson and three others vs. Savage, the declaration stated that James Savage was attached to answer four persons named of a plea of trespass, and that thereupon the said plaintiffs by their attorney complain, for that the said defendant; c., and throughout the residue of the declaration the plaintiff and defendant were not otherwise described, than by the phrase "the said plaintiffs," and "the said defendants:" the defendant demurred specially, and assigned amongst other causes, that the plaintiffs had not in their declaration stated or alledged that the said James committed the trespasses, but only that the said defendant committed the same, without stating that the said James is the person therein meant by the said words "the said defendant," or in any part of the said declaration calling or in any manner describing the said James as being a defendant: the plaintiff joined in demurrer.
The court intimated a decided opinion that the words "plaintiff" and "defendant" in the record, were a sufficient description. Gibbs, C. J. said, that in a case of Heaton vs. Ashdown and others, in which there were twenty-six defendants, he had while at the bar, about twenty-seven years since, in drawing the pleadings, adopted a like description, naming the first defendant, and adding the words and the said other defendants, and the propriety of it was not even then *Page 257 
questioned. And Chambre, J. held, that the present description was sufficiently clear.
In Stevenson vs. Hunter (6 Taunt. 406,) the declaration stated, that William Hunter was summoned to answer John Stevenson and Elizabeth, assignees of the estate and effects of James Stevenson, a bankrupt, that he render, c., "and therefore the said plaintiffs, by G. W., their attorney, complain, for that whereas the said defendant was indebted, c., and the parties were called plaintiffs and defendant throughout the declaration, beginning the succeeding counts by the words — "And whereas, the said defendant," c. The defendant demurred, and assigned for cause, that it was alledged that "the said plaintiffs, as assignees as aforesaid by G. W., their attorney complain," though no persons were therein-before specified as being plaintiffs in the said suit, and that it did not appear with sufficient certainty by the declaration who were the persons suing by the aforesaid attorney; and that it was alledged in the several counts, that the causes of action accrued "to J. Stevenson
before he became a bankrupt, and to the plaintiffs as assignees as foresaid," although no persons were therein before specified as being such plaintiffs; and that it did not appear with sufficient certainty to whom the causes of action had accrued, and that the word "plaintiffs" used in the several counts of the declaration, was not a word of sufficiently certain, legal import; and that it was alledged in the several counts that the "said defendant" was indebted, though no person was therein-before specified as being a defendant in the suit; and that the word defendant used in the several counts of the declaration as denoting the person who became indebted as therein mentioned, was not a word of sufficiently certain legal import; and for that it did not appear with sufficient certainty, that the said William was the person who became indebted in the sums therein mentioned, nor that he was the person who committed the breach therein complained of. Vaughan, who was to have argued in support of the demurrer, admitted that after the intimation given by the court inDavison vs. Savage, he would not maintain it.
Gibbs, C. J. — We did so rule in two terms since, therefore it would be improper to permit the point to be argued. Judgment for the plaintiff.
The two preceding cases establish the words plaintiffs and defendant as of sufficient legal import to identify the parties when the name of each is omitted, and the latter case enlarges their operation sufficiently *Page 258 
to embrace the representative character of the plaintiffs in the suit, who had brought their action as assignees. Hence, I conclude, that if the narr, alledge a judgment to have been recovered by the plaintiff against the defendant, it must be considered and taken to be a judgment against him in the character he sustains as defendant in the suit, and none other. In determining therefore, the question whether the judgment set forth in the declaration can be considered to be against Jehu and Thomas Clark, trading under the firm of Jehu Thomas Clark, when the narr. alledges a judgment of the said court recovered against the said Jehu and Thomas Clark, the defendants, c., omitting the word trading, c., it appears to me only necessary to decide what is the character or interest the defendant represents in the suit pending. The language of the narr. does not leave either the character of the claim or the liability of the party equivocal, if the word defendant, acc6rding to the cases I have adverted to, be allowed its legal import or meaning. There are, however, in the case under consideration other words, which to my mind, clearly define and point out with sufficient certainty, that the judgment is for the same debt and in the same right as set forth in the writ; for, immediately after the words defendants follows "the sum of $285 45 'above demanded,' `which in and by the said court were then and there adjudged,' c., `whereof the said defendantswere convicted.'" These words "above demanded," confine the judgment set forth to the description contained in the writ, and which is considered as recited in the caption of the declaration. Had the word defendants been omitted, it might have been a question whether the allegation that a judgment had been rendered against Jehu Thomas Clark would have been sufficiently certain, as it might be considered that such a description would not confine it necessarily to the parties in the character in which, as defendants, they had been summoned in the suit pending. Hence I conclude from the legal import of the word defendants, that the narr. does show with certainty the parties against whom the judgment on which the action is founded was rendered, and the term, the court and the sum recovered are distinctly and expressly stated. The matter of estoppel thus appearing on the face of the declaration, can the defendant be allowed to plead by denying that he was served with process in the suit in which the judgment set forth in the narr. was rendered, or that he had no notice of said suit? If the judgment had been in the same court in which the second suit was brought, or had been in a court of record within the *Page 259 
same jurisdiction; it is manifest he could not: and it is equally apparent from what has been already stated, that such a plea would be ill on demurrer.
In the examination of this case. I have been considering it as if the judgment had been of the same court, or of one within the same jurisdiction. I shall now proceed to inquire, whether the same rule of pleading is applicable to such a judgment as the one on which this suit is founded. The original judgment, upon which the plaintiff in this suit has brought his action, was rendered in the District Court for the city and county of Philadelphia, in the State of Pennsylvania,, and is therefore, not a judgment of the same court nor of any court within the same jurisdiction; but on the contrary, is of a foreign court and of a different and independent jurisdiction. Supposing no constitutional provision to exist relative to judgments obtained in the different States of the United States, they would be considered like all other foreign judgments, and their effect precisely the same, which would be nothing more than prima facie evidence, according to the rule of the common law. But the constitution of the United States declares "that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State; and the Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved and the effect thereof."
By the act of the 26th of May, 1790, chapter 11, Congress provided for the mode of authenticating the records and judicial proceeding of the State courts, and then further declared that "the records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from whence the said records are or shall be taken. The act declares that the record, duly authenticated, shall have such faith and credit as it hasin the State court from whence it is taken. If in such court it has the faith and credit of evidence of the highest nature, viz; recordevidence, it must have the same faith and credit in every other court. Congress have, therefore, declared the effect of the record by declaring what faith and credit shall be given to it, as was remarked by Justice Story in Mills vs. Duryee, (7 Crunch. 484,) who further observed in delivering the opinion of the court in that case, "were the construction contended for by the plaintiff in error to prevail, that judgments of the State courts ought to be considered prima facie *Page 260 
evidence only, this clause in the constitution would be utterly unimportant and illusory. The common law would give such judgments precisely the same effect. It is manifest, however, that the constitution contemplated a power in Congress to give a conclusive effect to such judgments: and we can perceive no rational interpretation of the act of Congress, unless it declares a judgment conclusive, when a court of the particular State where it is rendered would pronounce the same decision." In the same case, upon the rule of pleading, Justice Story remarked, "the pleadings in an action arcgoverned by the dignity of the instrument on which it is founded. If itbe a record, conclusive between the parties, it cannot be denied but bythe plea of nul tiel record; and when Congress gave the effect of a record to the judgment, it gave all the collateral consequences. It may be proved in the manner prescribed by the act, and such proof is of as high a nature as an inspection by the court of its' own record, or as an exemplification would be in any other court of the same State." In the case in (1 Peters CircuitCourt Rep. 157,) the same construction has been given to the act of Congress, a case in all respects similar to the present, in which the same defence by plea, was relied on, and on demurrer thereto the plea was held to be insufficient; the judgment being set forth in the declaration, on inspection of the authenticated copy of the record, Justice Washington declared, in delivering the opinion of the Circuit Court of the United States, that the plea could not be allowed, for it appeared from the declaration in that record, that the parties were attached.a There have been *Page 261 
cases decided in New York and Massachusetts, which to a certain extent conflict with the opinion of the Supreme Court of the United States, and with that of Justice Washington, as contained in 1 Peters'Circuit Court Rep. Prom these State decisions it would appear, that notwithstanding the constitution and act of Congress, a defendant may by special plea contradict the record by denying that process was served upon him, or alledging matter showing that the court pronouncing judgment had no jurisdiction. The reason assigned *Page 262 
for this ground of distinction between records of the same State and records of the courts of different States is, that there are certain eternal principles of justice which never ought to be dispensed with, and which courts of justice never can dispense with but when compelled by positive statute. One of these is, that jurisdiction cannot be justly exercised by a State over property not within the reach of its process, or over persons not owing them allegiance, or not subjected to their jurisdiction by being found within their limits. The correctness and propriety of this general proposition cannot be questioned, and it must be admitted that the constitutional provision and the law of Congress are not repugnant to, but in strict accordance with, the principle involved in the proposition stated. The whole system is founded upon the legal presumption, that the judgment of a court of competent jurisdiction in any one of the United States, includes as well as concludes, all the necessary and essential preliminary stages of the suit, as well the notice or arrest of the party as the hearing of his defence, or what in law is equivalent, that an opportunity has been afforded of being heard before judgment; this is the only foundation on which the conclusiveness of a judgment, rendered within the same State or jurisdiction, can be sustained; and yet it never has been considered necessary that the rule of pleading should be violated, because fraud might be practised in rendering or obtaining a a judgment. Its existence or occurrence may effect a record as well as a deed or indenture, and would equally render them respectively void and inoperative. The plea of per fraudem, as I have before stated, would give the party his proper and legal defence, or by his bill in equity he could reach the conscience of the party and obtain equitable relief; without resorting to the irregular and unauthorized practice of allowing a plea contradicting the record; for although you cannot contradict, yet like any other instrument by which an estoppel works, it may be avoided by a plea which impeaches, and therefore, avoids its operation. The distinction which I have taken between pleas which contradict a record and those which impeach for the purpose of avoiding the operation thereof, appears to me well founded and in strict accordance with the established rules of pleading, and that a proper regard to the same is necessary for the purpose of giving to the constitutional provision and the act of Congress *Page 263 
relative to records, their legitimate and conclusive effect, and at the same time affording to the party ample remedy against every probable occurrence of fraud or circumvention. The constitution of the United States and the act of Congress passed pursuant thereto must prevail; and if, which I do not admit, injury should be likely to result by giving to the lex scripts its full and legal effect, although such a tendency might and would be a good reason for further legislation to obviate the defect, it never could sanction the correction thereof by judicial action.
Hence, and for the reasons I have stated, I consider the several pleas of the defendant, as well those which recite the original writ as those which omitting the same simply deny the service of process or appearance, as all equally an inefficient defence to the plaintiff's declaration, and that they are respectively ill on the several demurrers thereto.
In considering the pleas demurred to I have confined the inquiry hitherto to the defendant's right to impeach the record, although he cannot contradict it. I will now proceed to examine the question upon the ground of jurisdiction. Before entering upon this it may be proper to remark, that there is a manifest distinction between the jurisdiction of a court, and its action in the exercise of its legitimate jurisdiction, by taking cognizance of a suit. Hence it follows, that the jurisdiction of a court may be perfect and ample, having full power and authority to hear, try and determine all transitory actions, and yet, in the exercise of its unquestionable jurisdiction, it must proceed to acquire cognizance, through the instrumentality of its process. I thus notice this distinction, because I consider it material to be regarded in settling the character of the pleas demurred to in the present case; for although a court cannot by its own action or decision, either confer upon itself, or take away jurisdiction; it must from necessity have a right to determine when its process has been served or parties have appeared, and of these acts by which it takes cognizance of the suit and parties, its record must be the legitimate and conclusive evidence. Therefore, although I cannot allow a plea to be well pleaded, which contradicts the record, by denying the service of process or the appearance of the defendant, when by the record the contrary appears, I have no doubt of the right to plead matter which shows that the court rendering judgment has transcended its jurisdiction; as if a court having jurisdiction to the amount of $500, should render judgment for $1,000; or being a court of limited *Page 264 
jurisdiction should attempt to exercise its functions beyond or out of its restricted sphere of action. In a suit founded on a judgment of a court thus transcending its jurisdiction, either in amount or place, the party against whom the judgment was rendered, would unquestionably have a right to plead the special matter, showing the want of jurisdiction, and that thereby the judgment was extra-judicial or coram non judice. The defence, by pleading specially the want of jurisdiction, in the cases I have suggested, could not be demurred to; for it does not contradict the record, but alledges matter which makes it appear that the judgment is void, and can have no effect, either in the court in which it was rendered or elsewhere. Allowing a defendant to show by a plea that a court has exceeded its jurisdiction, is very different from authorizing him by plea to contradict a fact appearing upon the record of a court exercising its legitimate jurisdiction, within its own limits, and as in the case now under consideration, in a transitory action determining a fact, viz: the service of its own process, which, as also the appearance of the party, it possessed the undoubted authority to determine, as much as any other question involved in the suit. If the defendant in this action can, under the idea of denying the jurisdiction, put in issue by plea the fact of service of process or his appearance, when the record establishes the facts,. he may equally claim the right to deny that a declaration was filed, or to controvert any of the preliminary stages of the suit: it does not obviate the difficulty to say that the party being a non-resident of the State, there could, therefore, be no exercise of jurisdiction without service of process or appearance; this would be assuming a fact contrary to the record, and even supposing the fact to be so, yet the record evidence being conclusive, it would appear impossible to admit such a plea, when no proof can be adduced in. support of it, unless it be lawful and right to allow that to be invalidated by other testimony which the court rendering the judgment, the constitution of the United States and the act of Congress of 1790, all concur in declaring conclusive. In this case, the judgment having been rendered by a court of competent jurisdiction, and within its jurisdiction, the action being transitory, it must be admitted, that the fact of service of process, as well as that of the defendant's appearance, being necessary to give cognizance of the suit, must, according to the record evidence, have passed sub judice, and been acted on by the court in the exercise of its legitimate jurisdiction; for the facts of service of process and appearance are parts of a transaction, *Page 265 
which if they did exist were essentially confined within the jurisdiction of the court rendering the judgment, no other tribunal can be competent to determine the question whether they existed or not, when the court has taken cognizance of the suit and rendered judgment. If this be not so, then it must follow, that in every case of a suit founded on a judgment of a court of competent jurisdiction over the subject matter or cause of action, the defendant may deny the service of process and appearance, for in all personal actions it is indispensable and essential to give the court cognizance of the suit and party defendant, that process should be served or an appearance had; the fact of residence or non-residence in transitory actions, cannot affect the question. But I cannot suppose it can be possible to maintain, according to any rule of good pleading, that such a plea would be sanctioned by a court in a suit founded on a judgment, appearing on its own record; if then, the authenticated copy of the record is to have the same effect in the courts of this State, as it would have in Pennsylvania, in the court rendering judgment, it must be conclusive.
a Field vs. Gibbs. — Circuit Court U. States, April Term, 1812.
New Jersey, ss. Nathan Field, (who prosecutes for the use of Samuel F. Conover,) a citizen of the State of Pennsylvania, complains of Martin Gibbs and Joel Gibbs, citizens of the State of New Jersey, in the custody of the marshal of the New Jersey district, of a plea that they render unto him two thousand seven hundred and three dollars and fifty-eight cents, which to him they owe and from him they unjustly detain. For that whereas, the said Nathan Field heretofore, to wit: in the term of September, in the year of our Lord eighteen hundred and ten, on the third Monday of the same month of September, in the Court of Common Pleas for the county of Philadelphia, in the commonwealth of Pennsylvania, before the honorable Jacob Bush and his associates, judges of said court, at Philadelphia, in the county of Philadelphia aforesaid, by the judgment of the said court recovered against the said Martin Gibbs and Joel Gibbs, the sum of fourteen hundred dollars, (part of said sum of two thousand seven hundred and three dollars and fifty-eight cents,) which in and by the said court, were then and there adjudged to the said Nathan Field for his damages which he had sustained, as well by reason of the non-performance by the said Martin Gibbs and Joel Gibbs, of certain promises and assumptions then lately made by the said Martin Gibbs and Joel Gibbs, to the said Nathan Field, as for his costs and charges, by him about his suit in that behalf expended, whereof the said Martin Gibbs and Joel Gibbs were convicted, as by the record and proceedings thereof remaining in the said Court of Common Pleas for the county of Philadelphia, in the Commonwealth of Pennsylvania, at Philadelphia aforesaid, more fully appears; which said judgment still remains in full force and effect, not reversed, satisfied or otherwise vacated. And the said Nathan Field hath not obtained any execution or satisfaction of or upon the said judgment so recovered as aforesaid, whereby an action hath accrued to the said Nathan Field, to demand and have of and from the said Martin Gibbs and Joel Gibbs, the said sum of fourteen hundred dollars. And whereas, also, the said Martin Gibbs and Joel Gibbs afterwards, to wit: on the first day of October, in the year of our Lord eighteen hundred and ten, at Trenton, in the New Jersey district aforesaid, were indebted to the said Nathan Field in the sum of one thousand three hundred and three dollars and fifty-eight cents, residue of the said sum of two thousand seven hundred and three dollars and fifty-eight cents, for goods, wares and merchandises before that time sold and delivered by the said Nathan Field, to the said Martin Gibbs and Joel Gibbs, at their special instance and request, and to be paid by the said Martin Gibbs and Joel Gibbs to the said Nathan Fields, when they the said Martin Gibbs. and Joel Gibbs should be thereunto afterwards requested; whereby and by reason of the said last mentioned sum of money being and remaining wholly unpaid, an action hath accrued to the said Nathan Field to demand and have of the said Martin Gibbs and Joel Gibbs the said sum of one thousand three hundred and three dollars and fifty-eight cents, residue of the said sum of two thousand seven hundred and three dollars and fifty-eight cents; yet the said Martin Gibbs and Joel Gibbs, although often requested so to do, have not nor hath either of them, as yet paid the said several sums of money above demanded or any part thereof to the said Nathan Field. But they to do this have hitherto wholly refused and still do refuse, to the damage of the said Nathan Field, one thousand dollars, and therefore he brings suit, c.
LAYTON, Justice, concurred with the chancellor.
 Judgment for the defendant.